Peelle, J.,
delivered the opinion of the court:
At the time of the passage of the act of March 3, 1899 (30 Stat. L., 1007), the claimant was an actímg assistant surgeon, with the relative rank and compensation of an assistant surgeon, in the temporary service of the United States Navy, having been appointed thereto from civil life June 29, 1898, under the provisions of the naval appropriation act of May 4, 1898 (30 Stat. L., 369, 380, and 2d Supp. R. S., 750, par. 4), authorizing the President “to appoint for temporary service 25 acting assistant surgeons who shall have the relative rank and compensation of assistant surgeons.”
The claimant continued to serve as an acting assistant surgeon under that appointment until November 8, 1899, when he was commissioned an assistant surgeon .in the permanent service of the Navy;,and later, under the act of June 7, 1900 (31 Stat. L., 684, 697), he was promoted to the rank of lieutenant, junior grade.
Prom Juty 1 to September 30, 1899, the claimant received the pay of his grade in the first five years after date of appointment, as provided by Revised Statutes, section 1556.
After October 1,1899, ho was paid the rate of assistant surgeon in the Army, under Revised Statutes, sections 1168 and 1261, made applicable to naval officers by section 13 of the act of March 3,1899 (sujyra), which, so far as pertains to this case, reads:
“Sec. 13. That, after June thirtieth, eighteen hundred and ninety-nine, commissioned officers of the line of the Navy and *158 of the Medical and Pay Corps shall receive the same pay and allowances, except forage, as are or may be provided by or in pursuance of law for the officers of corresponding rank in the Army:
“Provided, That such officers when on shore shall receive the allowances, but fifteen per centum less pay than when on sea duty; but this provision shall not apply to warrant officers commissioned under section twelve of this act:
* * * * *
“ Provided further, That naval chaplains who do not possess relative rank shall have the rank of lieutenant in the Navy; and that all officers, including warrant officers, who have been or may be appointed to the Navy from civil life, shall, on the date of appointment, be credited, for computing their pa3r, with five years’ service.
* * * * *
“And2JT0vided further, That no provision of this act shall operate to reduce the present pay of any commissioned officer now in the Navy; and in any case in which the pay of such an officer would otherwise be reduced he shall continue to receive pa3>- according to existing law. ”
The claimant contends that inasmuch as he was an acting-assistant surgeon in the temporary service of the Navy when that act was passed, though not commissioned an assistant surrgeon in the permanent service until November-8, 1899, thereafter, he is entitled to the benefit of the last proviso above recited, as amended by the act of June 7,1900 (31 Stat. L., 697), which reads:
“Section 13 of the act approved March third, eighteen hundred and ninety-nine, entitled ‘An act to reorganize and increase the efficiency of the personnel of the Navy and Marine Corps of the United States ’ is hereby so amended as to provide that nothing therein contained shall operate to reduce the pay which, but for the passage of said act, would have been received by any commissioned officer at the time of its passage or thereafter.”
Thus we have presented the questions: (1) Whether an acting assistant surgeon in the temporaiy service of the Nav3r when the act of March 3, 1899, was passed, who was subsequently commissioned in the permanent service, is entitled to the benefit of the act, as though his temporary and permanent service had been continuous; or if not continuous, are commissioned officers of the Navy, appointed subsequent to the passage of *159 the act, entitled to the benefit of the amendment? (2) When receiving navy pay, is the claimant entitled to the benefit of five years’ credit for constructive service under the third proviso to said section 13, and if so, does such credit date from his appointment in the temporary service or after his appointment in the permanent service in November, 1899? (3) When receiving- the army pa}*- provided for by section 13 of said act, is the claimant entitled to the mounted pay authorized by Revised Statutes, section 1168, to the officers of the Medical Department of the Army? (4) When on sea duty,'is the claimant entitled to a sea ration ?
In respect of the first question, the Comptroller of the Treasury, in his opinion, says:
“ The proviso quoted was intended to protect from reduction the rates of pay to which officers of the Navy were entitled in the several grades or positions then held by them. Although Assistant Surgeon Taylor occupies the same relative grade in the regular service that he formerly held in the temporary force of the Navy, yet the two positions are essentially different and distinct. His appointment to the regular service while still holding a position in the temporary force operated as a discharge from his former position and an appointment to the latter; and, although the two services are for some purposes to be regarded as continuous, the one with the other, yet the position of assistant surgeon held by him in the temporary force is a different and distinct position from that of assistant surgeon in the permanent force which he now holds. ”
In the case of Charles M. Thomas v. The United States (ante, p. 113) the court, in respect of the proviso to section 13 and the amendment thereto of June I, 1900 (supra), protecting naval officers against reduction in the pay they were receiving when the act of March 3, 1899, was passed, said: “The original proviso to section 13 excepted from the purview thereof ‘the commissioned officers now in the Navy’ whose ‘present pay’ was therebjm-educed; while the amendment thereto extends the exception so as to apply to the pay such officers may receive thereafter in case of promotion to higher grades;” and as to such officers it is provided that they shall continue to receive pay “according to existing law.”
The evident purpose of section 13, act of March 3, 1899, was to assimilate the paj'- of officers of the line of the Navy and of the medical and pay corps to the pay and allowances of *160 officers of corresponding rank in the Army, reserving, however, to such officers then in the Navy the right to continue to receive navy pay in case the assimilated pay under the act was less. But to extend this proviso to officers appointed after the pay and allowances took effect would defeat the very purpose of the act.
The original proviso to section 13 and the amendment thereto protecting officers against reduction in pay must be given a reasonable construction. There can bé no controvert but that the original proviso applied onty to the officers in the Navy at the time the act was passed, and to the pay the3r were then receiving. The material words of the amendment of June 7, 1900 (supra), are:
“ That nothing therein contained (section 13) shall operate to reduce the pay, which, but for the passage of said act, would have been received ly any commissioned officer at the time of its passage or thereafter.”
Clearly meaning that in case the act did operate to reduce the pa3r such officers were receiving at the time the act was passed or thereafter, they should continue to “receive pay according to existing law.” That is to say, the words 11 or hereafter’’' as used in the amendatory act refer to reduction of the pay of “commissioned officers now in the Navy,” i. e., when the act of March 3, 1899, was passed, and not to the pay of officers thereafter appointed. This construction is in harmony with the purposes of the act to equalize the pay of the officers of the Nav3^ with officers of the Army of corresponding rank.
We are therefore of the opinion that the amendment was clearly intended to apply only to the commissioned officers in the Navy when the original act was passed and to the pa3^ they might receive thereafter in case of promotion.
This appears to have been the view of the Secretary of the Navy, expressed by him in a communication to Congress suggesting the amendment, and such was the conclusion reached by this court in the case of Richardson v. The United States (post). And following that decision the claimant in the present case would not be entitled to the benefit of the proviso as amended if his appointment to the Navy in the first instance had been after the act of March 3, 1899.
*161 But, having been in the temporary service of the Navy when the act was passed, and from such temporary service thereafter commissioned in the same grade by permanent commission, is he entitled to the benefit of the act?
B3r Revised Statutes section 1370, as amended by the naval appropriation act of May 1, 1898 {supra), in respect to assistant surgeons, it was first provided that—
“ Ho person shall be appointed assistant surgeon until he has been examined and approved by a board of naval surgeons designated bjr the Secretary of the Navy, nor who is under twenty-one or over thirt3T 3rears of age, inclusive.”
That provision, as its language imports, was to guard against the appointment of incompetent surgeons in the Navy and evidently applies to appointments to be made in the regular or permanent service as contradistinguished from appointments in the temporaiy service; for in the next succeeding clause or paragraph in the same act is the provision authorizing the President “to appoint for temporary service twenty-five acting assistant surgeons, who shall have the relative rank and compensation of assistant surgeons.”
It was while the claimant was serving in that capacity that the act of March 3, 1899, was passed, and it was not until November 8 following that the claimant was appointed and commissioned an assistant surgeon in the permanent service of the Navy. After the passage of the act of J une 7, 1900 {supra), providing that “assistant surgeons under the age of fifty years appointed for temporary service during the war with Spain, having creditable records, who were now in the Nav3’, may be given permanent commissions,” the claimant was, as of that date, appointed an assistant surgeon with the rank of lieutenant (junior grade).
Thus the Congress b3*- their legislation have recognized the distinction between officers in the permanent and temporary service in the Navy.
In the act March 3, 1899, we fail to find any express provision applying to officers of the Navy in the temporary service. That was “An act to reorganize and increase the efficiency of the personnel of the Navy and the Marine Corps of the United States,” evident^ referring to the officers of *162 the Kegular Navy, as it certainly could not be contended that the Congress had in view the reorganization of the officers in the temporary service, or that by that act they intended to incorporate them into the permanent service. On the contrary, it was not until the act of June 7, 1900, that provision was made for continuing them in the service by permanent commissions. Those who received commissions in the permanent service prior to that act did so presumably after a proper examination and approval by the board of naval surgeons designated by the Secretary of the Navy under the act of May 4, 1898.
We are therefore of the opinion that the claimant is not entitled to the benefit of the provisions of the act of March 3, 1899, prior to his appointment in the permanent service of the Navy.
Having reached this conclusion, it follows that the claimant is not entitled to the benefit of the credit of five years’ constructive service therein provided for officers appointed from civil life during his appointment in the temporary service; and for the same reason he is not entitled to receive mounted pay during that period.
But in respect to his right to receive mounted pay while receiving army pay after his appointment in the permanent service of the Navy, the case of Richardson v. The United States (post) furnishes. the rule by which to measure his rights.
The question of his right to recover commutation for a sea ration after the passage of the act of March 3, 1899, is determined adversely to the claimant in the case of Charles M. Thomas v. The United States (ante, p. 113).
Judgment will be suspended until the amount due the claimant, if any, for mounted pay while receiving army pay subsequent to his appointment in the permanent service, has been ascertained.
The petition in'respect to the other claims is dismissed.